Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X – DJ 2024-062C

| EDGARDO CABÁN JIMÉNEZ<br><br>Apelado<br><br>V.<br><br>ERNESTO LUIS RIVERA RAMOS MARIA ELENA PEREZ GONZALEZ Y LA SOCIEDAD DE BIENES GANANCIALES CONSTITUIDA POR AMBOS<br><br>Apelantes | TA2025AP00103 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: MZ2021CV01063<br><br>Sobre: Incumplimiento de Contrato, Enriquecimiento Injusto, Cobro de dinero y Daños |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 18 de septiembre de 2025.

El 9 de julio de 2025, compareció ante este Tribunal de Apelaciones, el señor Ernesto L. Rivera Ramos (en adelante, señor Rivera Ramos o parte apelante), mediante recurso de apelación. Por medio de este, nos solicita que revisemos la *Sentencia* emitida el 6 de junio de 2025 y notificada el 9 de junio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Demanda* presentada por el señor Edgardo Cabán Jiménez (en adelante, señor Cabán Jiménez o parte apelada).

Por los fundamentos que exponemos a continuación, se *confirma* el dictamen apelado.

### I

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Demanda* sobre incumplimiento de contrato,

enriquecimiento injusto, cobro de dinero y daños interpuesta por el señor Cabán Jiménez, en contra del señor Rivera Ramos, la señora María E. Pérez González (en adelante, señora Pérez González) y la Sociedad de Bienes Gananciales compuesta por ambos. En primer lugar, la parte apelada sostuvo que, el 25 de agosto de 2018, las partes dialogaron con el propósito de llegar a un acuerdo verbal para la compraventa del inmueble: "casa de concreto armado la cual consta de sala-comedor, cocina, cuartos dormitorios, un baño, ubicada en Mayagüez Terrace, 1-10 B, Bloque #1, Casa 4038, Calle N. Medina González en Mayagüez, Puerto Rico". Alegó que, el 2 de septiembre de 2018, fue acordado verbalmente entre las partes la compraventa de la propiedad antes descrita, por la suma de sesenta y cinco mil dólares ($65,000.00). Según la parte apelada, las partes acordaron que, las reparaciones y arreglos serían costeados por el señor Cabán Jiménez, pero que, de no llevarse a cabo la compraventa, la parte apelante le reembolsaría el dinero invertido. Acotó que, debido a que la parte apelante tardó en entregar copia de la escritura y del contrato de opción de compra, en octubre de 2018 realizó múltiples gestiones que incluyeron la entrega de dos borradores de Contrato de Opción de Compra, con el fin de agilizar el proceso. Sin embargo, la señora Pérez González no estuvo de acuerdo con los mencionados borradores. El señor Cabán Jiménez, adujo que, mientras realizaba gastos e inversiones en la propiedad, la parte apelante no le remitía el contrato escrito. Por lo que, el 29 de abril de 2019, se comunicó vía telefónica con la señora Pérez González, donde le reclamó que el acuerdo contractual seguía vigente. Aseguró que, la señora Pérez González le confirmó haber recibido una comunicación electrónica donde el señor Cabán Jiménez le requirió el otorgamiento del contrato de opción de compraventa de forma escrita. Asimismo, que la señora Pérez González le comentó que un notario le indicó que completaran dicho

modelo de contrato y que luego lo revisaría. No obstante, la parte apelada continuaba realizando arreglos en la propiedad hasta restaurarla sin poder solicitar el financiamiento hipotecario porque el contrato seguía sin ser otorgado.

De acuerdo a las alegaciones de la *Demanda*, el 2 de junio de 2019[1], las partes suscribieron un contrato intitulado *Contrato de Compraventa*, donde se pactó un término de noventa (90) días, pese a que previamente se había notificado que el contrato sería por un (1) año. El señor Cabán Jiménez acotó que, la parte apelante le permitió alquilar cuartos a estudiantes universitarios hasta tanto se aprobaba el préstamo hipotecario. Ante lo anterior, le notificó a la parte apelante que, le arrendaría la casa a unos estudiantes que, luego comenzaron a vivirla el 1 de julio de 2019, por un canon de arrendamiento mensual de $850.00.

Conforme a lo alegado por el señor Cabán Jiménez, para el mes de agosto de 2019, alguien entró a la casa y se apropió, entre otras cosas, de la escritura de la casa opcionada. Posteriormente, la señora Pérez González se comunicó con un familiar de la parte apelada donde le comunicó que, la parte apelante se proponía cortar los servicios de luz y agua, y que fueron ellos quienes entraron a la propiedad. Aseguró que, sin avisarle, la parte apelante ordenó cortar los servicios de agua y luz, por lo que, los estudiantes tuvieron que abandonar la propiedad. El señor Cabán Jiménez, sostuvo que, desde el 1 hasta el 13 de septiembre de 2019, estuvo tratando de comunicarse con la parte apelante vía teléfono celular sin obtener respuesta. Ante esto, el 13 de septiembre de 2019, el señor Cabán Jiménez remitió un correo electrónico a la parte apelante con el motivo de acordar una reunión. El 14 de septiembre de 2019, se reunieron el señor Cabán Jiménez, el señor Wilson H. Cabán

---

[1] El aludido contrato tiene fecha de 3 de junio de 2019.

Jiménez, el señor Rivera Ramos y la señora Pérez González, donde alegadamente estos últimos dos se comprometieron a pagar las mejoras e inversiones realizadas por la parte apelada. De acuerdo al señor Cabán Jiménez, la parte apelante acordó pagarle la suma de doce mil doscientos dólares ($12,200.00). La parte apelada sostuvo que, pese a lo acordado, el 21 de septiembre de 2019, el señor Rivera Ramos, le envió un correo electrónico donde le indicó que no cumpliría con dicho acuerdo y que, toda conversación relacionada con dicho asunto debería ser canalizado a través de la Lcda. Lizaida Irizarry. En su *Demanda*, el señor Cabán Jiménez esbozó las alegadas reparaciones y trabajos realizados en la propiedad objeto de la controversia, a saber:

a. Se repararon paredes embolsadas de empañete en sala, cocina y cuartos

b. Se reemplazaron todas las varillas explotadas en el interior de las paredes embolsadas

c. Se selló techo con asfalto de danosa y sellador liquido

d. Se reconstruyó el petril lado izquierdo para preparar otro ya que estaba podrido y cayéndose en pedazos

e. Se sacó la construcción en "galvalum" que hac[í]a función de marquesina porque estaba destruida por los efectos del huracán María

f. Se quitaron paneles de paredes que divide con la casa del vecino ya que estaban podridas

g. Se rasparon las rejas, se le saco el moho, se le puso primer y se pintaron las rejas y portón del frente de la casa

h. Se lijaron y pintaron las ventanas de la propiedad

i. Se pintó la casa en su exterior y balcón delantero

j. Se instaló cortina de lona en la fachada principal para evitar que se moje el balcón

k. Se compraron, instalaron y pintaron puertas nuevas cuarto #1 y #3 ya que estaban rotas y no cerraba correctamente ni ofrecían protección

l. Se reparó puerta de "screen" de la entrada principal incluyendo botella de presión

m.     Se cambiaron todas las cerraduras de los cuartos y cocina por cerraduras nuevas

n.     Se compraron e instalaron operadores de ventanas de los cuartos

o.     Se eliminó toda la cabrería sin uso en el techo y lados de la casa y se organizaron, repararon agarraderas y barreta para cabrerías que estaban colgando en la pared de la marquesina

p.     Se destaparon y corrigieron los desagües del techo de la casa

q.     Se compró e instaló "screen" puerta de cocina

r.     Se compró e instaló formica gabinete de cocina

s.     Se compraron e instalaron abanicos de techo para comedor y cuarto pequeño

t.     Se arregló closet cuarto pequeño y se reparó marco de la puerta

u.     Se arregló la cerradura, se modificó las dimensiones de la puerta de madera del balcón para que abriera bien pues estaba desnivelada

v.     Se sacaron los escombros, tierra almacenada y se podaron arbustos del patio trasero

w.     Se realizaron tres (3) viajes en guaguas o camiones con escombros recogidos de la parte trasera para llevarlos al vertedero

x.     Se colocaron tapas tipo "w[a]ter proof" en pared externa de la casa

y.     Se repararon las sillas del comedor, todos los accesorios del baño, incluyendo ducha las cuales estaban rotas

La parte apelada argumentó que, las inversiones que realizó y que no han sido reembolsadas representaban un enriquecimiento injusto de la parte apelante, quien se benefició de las mismas. Pidió ser indemnizado por la cantidad de sesenta y cinco mil dólares ($65,000.00) en concepto de enriquecimiento injusto, de reparaciones y mejoras al inmueble, por incumplimiento de contrato y por pérdida de ingreso en arrendamiento. De igual manera, solicitó una partida por daños y perjuicios ascendente a veinticinco mil dólares ($25,000.00). Añadió que, el término prescriptivo de la causa

de acción se paralizó mediante misiva remitida a la parte apelante por correo certificado con acuse de recibo #9590 9402 5120 9092 5822 30, el día 19 de agosto de 2020.

En respuesta, la parte apelante presentó la *Contestaci[ó]n a la Demanda*. Por medio de esta, alegó que, la propiedad objeto de controversia nunca le fue ofrecida a la parte apelada para opción de compra antes del 3 de junio de 2019. Sostuvo, además que, la parte apelada no estaba autorizada a realizar arreglos y/o mejoras a la propiedad ni para subarrendar la misma. Asimismo, alegó que, la demanda estaba prescrita conforme a los Artículos 1189 y 1204(a) del Código Civil de Puerto Rico. Por tanto, solicitó que declarara No Ha Lugar la *Demanda*.

Transcurridas varias incidencias procesales, innecesarias pormenorizar, el 9 de junio de 2025, el foro *a quo* emitió la *Sentencia* cuya revisión nos ocupa. En su *Sentencia,* hizo constar que, el 12 de julio de 2024 fue celebrado el juicio en su fondo y fue admitida en evidencia la siguiente prueba:

1. Contrato de Opción de Compra firmado entre las partes el día 3 de junio de 2019, admitido por estipulación.

2. Sentencia dictada el día 12 de noviembre de 2019 en el Caso Civil MZ 2019CV01739 sobre Desahucio, presentada por la Parte Demandada.

3. Mandamiento de Lanzamiento en el caso civil MZ 2019CV01739; presentada por la Parte Demandada.

4. Escritura número 71 de Acta de Presencia otorgada el 30 de diciembre de 2019; Presentada por la Parte Demandada.

5. Modelo de Contrato de Compraventa de Banco FirstBank de Puerto Rico presentado por el Demandante. *Exhibit* #2

6. Modelo de Contrato de Compraventa del Banco Popular de Puerto Rico presentado por el Demandante. *Exhibit* 3.

7. Múltiples fotografías de la propiedad objeto del litigio presentada por el Demandante. Se

admitieron los *Exhibits #30, 31, 32, 34, 35, 36, 37, 39, 40, 41.*

8. Múltiples facturas de gastos incurridos por el Demandante para mejorar la propiedad litigiosa. *Exhibit 13 al 29, se excluyeron las identificaciones 18 y 28.*

9. Contrato de Arrendamiento (Subarrendamiento) de la propiedad objeto del litigio entre el Demandante y 4 estudiantes universitarios. *Exhibit 19.*

10. Carta de 19 de agosto de 2020 remitida por correo certificado por parte del Demandante a la Parte Demandada intitulada "Notificación de Reclamación Extrajudicial e Interrupción de Término Prescriptivo". *Exhibit 31.*

11. Comunicación del Demandante a los Demandados de 16 de septiembre de 2019 con hoja de envío de "Copy Center". *Exhibit 29.*

12. Comunicación de 21 de septiembre de 2020 de los Demandados al Demandante. *Exhibit 30.*

El Tribunal de Primera Instancia emitió las siguientes determinaciones de hechos:

1. Las partes efectuaron un Contrato de Opción de Compra **verbal** y el demandante ocupó la propiedad en el año 2018, con el compromiso de firmar un Contrato de Opción de Compra.

2. El demandante solicitó a los demandados el Contrato de Opción de Compra y copia de la Escritura de la propiedad para tramitar el préstamo hipotecario necesario.

3. Pasaron varios meses y los Demandados no entregaron las Escrituras y ni se había firmado el Contrato de Opción de Compra a pesar de que el Demandante les entregó dos (2) copias de modelos de Contrato de Compraventa para que se agilizara el procedimiento.

4. El día 3 de junio de 2019 las partes se vincularon contractualmente bajo un contrato intitulado "Contrato de Compraventa" redactado en los idiomas español e inglés, por el termino de 90 días.

5. La propiedad objeto del contrato está ubicada en la Urbanización Mayagüez Terrace I-10-B, Bloque Núm. 1, Calle N. Medina González, en Mayagüez, Puerto Rico.

6. Las partes acordaron un precio de compraventa por la cantidad de $65,000.00 dólares y con una opción de compra por un término de noventa (90) días a partir de la firma del contrato.

7. Las partes acordaron que el Demandante tramitaría un préstamo hipotecario por la cantidad de $65,000.00 para adquirir la propiedad y el comprador pagaría las mejoras requeridas en la propiedad.

8. El demandante indicó a los demandados que ante el deterioro de la propiedad se requería efectuar mejoras y reparaciones que el demandante las efectuaría. Las mejoras y reparaciones consistían en arreglos de construcción, plomería y electricidad, entre otros.

9. El demandante compró materiales de ferretería tales como: cerraduras, marcos de puertas, puerta, utensilios de trabajo para las mejoras y reparaciones a efectuarse.

10. El propósito principal del demandante con la propiedad era alquilarla a estudiantes universitarios.

11. El Demandante arrendó la propiedad a cuatro (4) estudiantes universitarios por la cuantía de $850 dólares mensuales.

12. En el mes de agosto de 2019, los demandados cortaron el servicio de agua y energía eléctrica de la propiedad. Esto produjo que los estudiantes arrendatarios abandonaran la propiedad con pérdidas para el demandante.

13. El día 14 de septiembre de 2019, las partes se reunieron en la Terraza de Plaza Las Américas. La parte demandada acordó pagar $12,200.00 al demandante por concepto de reparaciones y mejoras a la propiedad.

14. Los Demandados en medio del diálogo le informaron al Demandante que no iban a vender la propiedad según fue pactado.

15. La parte Demandada no solicitó remuneración económica por el tiempo de la Opción de Compra por lo cual no hubo contraprestación de clase alguna.

Finalmente, el foro apelado resolvió lo siguiente:

(1) Se declara HA LUGAR a la Demanda presentada por Edgardo Cabán y por consiguiente se concede el resarcimiento, indemnización y pago de las siguientes partidas:

(a) Resarcimiento de mejoras y reparaciones por la cuantía de $12,200.00.

(b) Indemnización por el pago de arrendamiento producto del Contrato de los estudiantes universitarios de $850.00 mensuales por 11 meses por la suma de $9,350.00.

(c)     La suma de daños y perjuicios por la cuantía de $5,000.00

(d)     Una partida de honorarios de abogado por la cuantía de: $2,155.00.

En desacuerdo, la parte apelante presentó el recurso de epígrafe, donde esgrimió los siguientes señalamientos de error:

1.    Erró el Tribunal de Primera Instancia, sala Superior de Mayagüez en su interpretación de la prueba testifical y documental presentada por la parte demandante.

2.    Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Mayagüez, al interpretar el derecho aplicable en el caso y concluir que no procede la doctrina alegada de Cosa Juzgada.

Por otro lado, el 10 de septiembre de 2025, la parte apelada presentó el *Alegato en Oposición a Apelación.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. Deferencia Judicial

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical. *Pueblo v. Hernández Doble,* 210 DPR 850, 864 (2022); *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013).[2] Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Pueblo v. Hernández Doble,* supra, pág. 864; *Santiago Ortiz v. Real Legacy et al.,* supra, pág. 219; *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 142 (2013).

---

[2] *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011); *SLG Rivera Carrasquillo v. AAA,* 177 DPR 345, 356 (2009).

No obstante, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos no debemos intervenir con las determinaciones ni las adjudicaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Hernández Doble*, supra, pág. 864; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016).[3]

Como sabemos, "[l]a tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad." *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Véase, además, *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Umpierre Matos v. Juelle, Mejía*, 203 DPR 254, 275 (2019), citando a *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). Es por lo que, nuestra más Alta Curia ha definido la *discreción* como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Pueblo v. Rivera Montalvo*, supra, citando a *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).[4] Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna." *Citibank et al. v. ACBI et al.*, supra, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435; *HIETel v. PRTC*, 182 DPR 451, 459

---

[3] *Dávila Nieves v. Meléndez Marín*, supra, pág. 753; *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356.

[4] *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435, citando a *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).

(2011); *Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977). Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997); *HIETel v. PRTC*, supra, pág. 459, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, supra.

## B. Teoría General de los Contratos

Es normativa reiterada que, las obligaciones nacen de la ley, de los contratos y cuasicontratos, de los actos ilícitos, u omisiones en que interviene culpa o negligencia, y cualquier otro acto idóneo para producirlas.[5]  Art. 1042 del Código Civil, 31 LPRA ant. sec. 2992; *Universal Ins. v. Popular Auto*, 207 DPR 228, 238 (2021); *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021).  Los contratos son negocios jurídicos bilaterales y en nuestro ordenamiento, constituyen una de las varias formas en que las personas pueden obligarse entre sí.  *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000).  Los contratos se perfeccionan cuando median el objeto, consentimiento y causa.  Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391; *Pérez Rodríguez v. López Rodríguez et at.*, 210 DPR 163, 186 (2022).  El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio.  Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Pérez Rodríguez v. López Rodríguez et at.*, supra, pág. 186; *Aponte Valentín et al. v. Pfizer Pharm*, 208 DPR 263 (2021).  En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, el cual permite a las partes pactar los términos y condiciones que tengan por convenientes.  *Pérez Rodríguez v. López Rodríguez et at.*, supra,

---

[5] El derecho aplicable en el caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, puesto que, la presentación de la *Demanda* y los hechos que dan base a esta tuvieron lugar antes de la aprobación del nuevo Código Civil de Puerto Rico, Ley 55-2020, según enmendado.

pág. 187; *Burgos López et al. v. Condado Plaza,* 193 DPR 1, 7-8 (2015); *Arthur Young & Co. v. Vega III,* 136 DPR 157 (1994). No obstante, tal libertad no es infinita, puesto que, encuentra su límite en el Art. 1207 del Código Civil, 31 LPRA ant. sec. 3372. El referido artículo dispone que, los términos y condiciones que las partes establezcan serán válidas cuando no sean contrarias a la ley, la moral, ni al orden público. *Íd.*; *Burgos López et al. v. Condado Plaza,* supra, págs. 7-8; *Oriental Bank v. Perapi,* 192 DPR 7, 15 (2014). Una vez perfeccionado el contrato, lo acordado tiene fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375; *Aponte Valentín v. Pfizer Pharms.,* supra, pág. 285; *Burgos López et al. v. Condado Plaza,* supra, pág. 8. Los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR,* 143 DPR 627 (1997).

### C. *Cosa Juzgada*

En nuestro ordenamiento jurídico, la doctrina de cosa juzgada se encuentra fundamentada en consideraciones de orden público, el interés del Estado en ponerle fin a los litigios y en proteger a los ciudadanos para que no se les someta en múltiples ocasiones a los rigores de un proceso judicial. *Parrilla v. Rodríguez,* 163 DPR 263, 268 (2004); *Mun. de San Juan v. Bosque Real, S.E.,* 158 DPR 743, 769 (2003); *Pérez v. Bauzá,* 83 DPR 220, 225 (1961). La aludida doctrina ha sido descrita como una "presunción que opera cuando entre el caso resuelto por la sentencia y aquel en que esta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron".

*SLG Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 153 (2011). Esta doctrina se entiende como "lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad". *SLG Szendrey-Ramos v. Consejo de Titulares*, supra, págs. 153-154 citando a *Parrilla v. Rodríguez*, supra, pág. 268, citando a J.M. Manresa, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 278; *Landrau Cabezudo et al. v. Puertos et al.*, 2025 TSPR 7, 215 DPR ___ (2025). Véase *Presidential v. Transcaribe*, 186 DPR 263, 275 (2012). Es por lo que, su propósito es darles fin a los litigios después de ser adjudicados de manera definitiva por los tribunales, y, de esta forma, garantizar la certidumbre y seguridad de los derechos declarados por el tribunal para así evitar gastos adicionales tanto al Estado como a los litigantes. *Íd.* págs. 273-274; *SLG Szendrey-Ramos v. Consejo de Titulares*, supra, pág. 154; *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 469-470 (2023).

Cabe destacar que, la doctrina de cosa juzgada no opera de forma automática. Su presunción solo tendrá efecto cuando concurran la más perfecta identidad de las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. *Presidential v. Transcaribe*, supra, pág. 274; *SLG Szendrey-Ramos v. Consejo de Titulares*, supra, pág. 155; *Landrau Cabezudo et al. v. Puertos et al.* supra. En cuanto a la identidad de cosas, nuestro Máximo Foro ha determinado que significa que, "el segundo pleito se refiere al mismo asunto del que versó el primer pleito, aunque las cosas se hayan disminuido o alterado". *Presidential v. Transcaribe*, supra, pág. 274. Existirá identidad de cosa cuando un juez o una juez, al realizar una determinación, se expone a contradecir el derecho declarado en una determinación anterior. *Íd.* págs. 274-275. Por otro lado, respecto a la identidad de causas, esta existe cuando "los hechos y los fundamentos de las peticiones son idénticos en lo que afecta a la

cuestión planteada". *Íd.*; *A&P Contractors v. Asoc. Caná*, 110 DPR 753 (1981). Para determinar la existencia de identidad de causas será necesario examinar si ambas reclamaciones versan en la misma transacción o núcleo de hechos. *Presidential v. Transcaribe*, supra, pág. 275. Finalmente, sobre la identidad de las personas de los litigantes y la calidad en que lo fueron, sus efectos se extienden a aquellos que intervienen en el proceso, a nombre y en interés propio. Es decir, "las personas jurídicas que son parte en ambos procedimientos, cumplidos los requisitos de identidad entre las casusas y las cosas, serían las mismas que resultarían directamente afectadas por la excepción de cosa juzgada". *Íd*, pág. 276.

### D. *Impedimento colateral por sentencia*

En nuestro acervo jurídico se ha reconocido la figura del impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada. El impedimento colateral por sentencia "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas." *A&P General Contractors, Inc. v. Asociación Caná, Inc.*, supra, pág. 762. Esta doctrina impide que, se litigue en un litigio posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior. *Landrau Cabezudo et al. v. Puertos et al.*, supra.

La doctrina de impedimento colateral por sentencia se distingue de la doctrina de cosa juzgada en la medida en que no es necesario que se configure la identidad de causas. *Íd.*; *A & P General Contractors, Inc. v. Asociación Caná, Inc.*, supra, pág. 765. Al igual que la doctrina de cosa juzgada, el propósito de la figura del impedimento colateral por sentencia es promover la economía procesal y judicial, y amparar a los ciudadanos del acoso que

necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados. *P.R. Wire Prod. V. Crespo & Assoc.*, 175 DPR 139, 152-153 (2008).

Nuestro Tribunal Supremo ha señalado que la doctrina del impedimento colateral por sentencia, es una matización de la doctrina de cosa juzgada, la cual persigue el fin de los litigios y garantiza la certidumbre y seguridad de los derechos declarados. *Beníquez v. Vargas*, 184 DPR 210, 225 (2012). En igual sentido, el impedimento colateral "tiene como propósito promover la economía procesal y judicial, proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia, evitar litigios innecesarios y decisiones inconsistentes". *Presidential v. Transcaribe*, supra, pág. 277; *Universal Insurance y otro v. ELA y otros*, supra, pág. 469.

En términos prácticos, el impedimento colateral por sentencia "impide que en un pleito posterior se relitiguen cuestiones de hecho o derecho necesarias para la adjudicación de un pleito anterior, independientemente de que haya sido por la misma causa de acción o por otra distinta, siempre que sea entre las mismas partes o sus causahabientes". *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 497 (2010); *Landrau Cabezudo et al. v. Puertos et al.*, supra. Para que aplique, es necesario que concurran los siguientes requisitos: (1) que el asunto de hecho o derecho sea el mismo en ambos pleitos; (2) que se haya litigado en un pleito anterior; (3) que se haya determinado mediante una sentencia final, y (4) que la determinación haya sido esencial para el fallo. *Marrero Rosado v. Marrero Rosado*, supra, págs. 469-470.

### III

En su primer señalamiento de error, la parte apelante sostiene que, el foro de primera instancia incidió en su interpretación de la prueba testifical y documental presentada por la parte apelada.

Adelantamos que, no le asiste la razón. Veamos.

Según reseñáramos, el 3 de junio de 2019, las partes de epígrafe otorgaron un contrato intitulado *Contrato de Opción de Compra*, donde oficializaron acuerdos verbales llevados a cabo en el 2018 sobre la opción de compra. En dicho contrato se estableció que, el comprador, el cual sería el señor Cabán Jiménez, acordaba pagar por las mejoras requeridas en la propiedad. De acuerdo a las determinaciones de hechos, la parte apelada le informó a la parte apelante que realizaría varias mejoras y reparaciones a la propiedad, debido a su deterioro. Dichas mejoras y reparaciones consistían en arreglos de construcción, plomería y electricidad, entre otros.

Posteriormente, el 14 de septiembre de 2019, las partes se reunieron, y la parte apelante notificó que no se iba a llevar a cabo la compraventa. En la misma reunión, las partes acordaron que, la parte apelante le pagaría $12,200.00 al señor Cabán Jiménez, por concepto de reparaciones y mejoras a la propiedad.

Dado a que la parte apelante no cumplió con el mencionado pago, la parte apelada presentó *Demanda*. Más adelante, en el juicio en su fondo, la parte apelada informó que, el testigo Manuel Matías, quien – según surge del expediente – laboró en las mejoras y reparaciones de la propiedad litigiosa no estaba disponible para el juicio. Ante esto, la parte apelante solicitó al foro *a quo* que aplicara la Regla 304 (5) de Evidencia. Tal solicitud fue declarada con lugar.

Finalmente, el foro de primera instancia declaró Ha Lugar la *Demanda* y concedió el resarcimiento e indemnización por las mejoras, reparaciones, por el pago de arrendamiento, daños y perjuicios y una partida de honorarios de abogado.

Según es sabido, la Regla 304 de las Reglas de Evidencia dispone sobre las presunciones específicas. En lo pertinente, en su inciso (5) dispone que, toda evidencia voluntariamente suprimida resultará adversa si se ofrece.

Si bien es cierto que, el foro de primera instancia aplicó la Regla 304(5) de Evidencia, es necesario destacar que, tuvo ante sí otra prueba documental y testifical en la cual respaldó su dictamen. Es decir, el Tribunal de Primera Instancia tuvo la oportunidad de evaluar prueba documental y testifical presentada en el juicio en su fondo que sustentó las reclamaciones de la parte apelada. Conforme a la evaluación de dicha prueba, el foro *a quo* emitió el dictamen apelado.

Al examinar el primer señalamiento de error propuesto por la parte peticionaria y el expediente ante nuestra consideración, colegimos que, las determinaciones de hechos esbozadas por el foro primario están sostenidas en la prueba que el juzgador de instancia tuvo ante sí. El Tribunal mereció entero crédito a los testimonios presentados en la vista en su fondo por la parte apelada y realizó un análisis certero conforme a la prueba que obra del expediente. La parte apelante, no logró controvertir dichas determinaciones de hechos de forma alguna.

Es nuestra postura que, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien – de ordinario – se encuentra en mejor posición para aquilatar la prueba testifical.[6] Tal deferencia podrá ser preterida cuando medie pasión, prejuicio, parcialidad o error manifiesto.[7] En el caso de marras, la parte peticionaria no logró demostrar la existencia de pasión, prejuicio, parcialidad o error manifiesto.

Cónsono con lo anterior, la parte apelante no nos colocó en posición de variar la decisión del foro apelado.

---

[6] *Pueblo v. Hernández Doble,* supra, pág. 864.
[7] *Íd.*; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219.

Como segundo señalamiento de error, la parte apelante aduce que, el foro *a quo* erró al interpretar el derecho aplicable en el caso y concluir que no procede la doctrina de cosa juzgada.

Adelantamos que, no le asiste la razón. Veamos.

La parte apelante señala que, existe una *Sentencia* sobre Desahucio en Precario emitida el 12 de noviembre de 2019, en el caso MZ2019CV01739.[8] Por medio de la aludida *Sentencia*, el Tribunal de Primera Instancia declaró Ha Lugar una *Demanda* de desahucio instada por la parte apelante, y ordenó el lanzamiento del señor Cabán Jiménez.

Según se puede observar, el caso MZ2019CV01739 era uno sobre **desahucio**. Sobre la acción de desahucio, nuestro Máximo Foro ha expresado que esta es "el mecanismo que tiene el dueño o la dueña de un inmueble para **recuperar la posesión de hecho de una propiedad**, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna".[9] (*Énfasis nuestro*). Queda claro que, **el objetivo** de la acción de desahucio es **recuperar la posesión** de hecho de un bien inmueble.[10]

Por otro lado, la doctrina de cosa juzgada ha sido descrita como una "presunción que opera cuando entre el caso resuelto por la sentencia y aquel en que esta sea invocada, **concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron**".[11] (*Énfasis suplido*).

En el caso ante nuestra consideración no es aplicable la doctrina de cosa juzgada. Como bien resolvió la primera instancia judicial, el primer litigio fue uno sobre desahucio, en el mismo únicamente se discutió el *derecho de posesión* del bien inmueble.

---

[8] Cabe señalar que la aludida *Sentencia* no fue anejada en el expediente del recurso de epígrafe.

[9] *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020)

[10] Véase *ATPR v. SLG Volmar-Mathieu,* 196 DPR 5, 9 (2016).

[11] *SLG Szendrey-Ramos v. Consejo de Titulares*, supra, pág. 153.

Mientras que, la acción del caso de epígrafe se circunscribe a una causa distinta, entiéndase, a un resarcimiento. Por tanto, no concurre la más perfecta identidad de las causas entre ambos pleitos, según exige la doctrina de cosa juzgada.

La parte apelante, en su recurso también argumenta que aplica la doctrina de impedimento colateral por sentencia. Puesto que, a su juicio, la parte apelada tuvo la oportunidad de litigar previamente el asunto, pero decidió no presentar defensas o alegaciones en el caso MZ2019CV01739.

La doctrina de impedimento colateral por sentencia "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas."[12] Dicha doctrina impide que, se litigue en un pleito posterior un hecho esencial que fue adjudicado mediante una sentencia final en un pleito anterior.[13] Esta no exige la identidad de causas, esto es, que la razón de pedir plasmada en la demanda sea la misma en ambos litigios.[14] Para que aplique, es necesario que concurran los siguientes requisitos: (1) que el asunto de hecho o derecho sea el mismo en ambos pleitos; (2) que se haya litigado en un pleito anterior; (3) que se haya determinado mediante una sentencia final, y (4) que la determinación haya sido esencial para el fallo.[15]

En la controversia de epígrafe tampoco aplica la doctrina de impedimento colateral por sentencia. Lo anterior, dado a que, conforme resolvió el foro *a quo*, los hechos litigados en ambos casos no podían ser litigados de manera simultánea en un pleito de

---

[12] *A & P Gen Contractors v. Asoc. Caná,* supra, pág. 762.
[13] *Landrau Cabezudo et al. v. Puertos et al.*, supra.
[14] Véase *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212, 219 (1992).
[15] *Íd*, págs. 469-470; *Universal Ins. y otro v. ELA y otros*, supra, págs. 469-470.

desahucio. Puesto que, en un pleito de desahucio, según ya explicáramos, se discute la posesión de hecho de un bien inmueble.

Conforme a lo anterior, no se cometió el error señalado.

**IV**

Por los fundamentos que anteceden, se *confirma* el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones